IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

01 APR 10 AM 8:41

U.S. DISTRICT COURT
N.D. OF ALABAMA

VANGUARD RESEARCH, INC.,

    PLAINTIFF,

V.                              CASE NO.: CV-01-J-279-NE

PEAT, INC.,

    DEFENDANT.

ENTERED

APR 10 2001

## MEMORANDUM OPINION

This cause comes on before the court on the defendant's motion to dismiss (doc. 5), which this court converted to a motion for summary judgment under Rule 12(b), Federal Rules of Civil Procedure. The defendant filed a brief and evidence in support of its motion (doc. 6). The plaintiff thereafter filed a memorandum in opposition with evidence attached thereto and the defendant submitted a reply. The plaintiff also filed a request for oral argument. This court finds that oral argument will not substantially assist the court, and therefore denies said request. The hearing previously set in this matter is **CANCELED**.

### I. Factual Background

The long and torrid history of this case is as follows: Defendant corporation was formed in 1996 from two predecessor corporations. Those predecessors had an ongoing business relationship with the plaintiff. Springer affidavit at ¶¶ 4, 5; complaint at ¶¶ 5, 8. Pursuant to that relationship, plaintiff was granted a license to market a hazardous waste processing system which used technology owned by defendant's predecessor corporation. Complaint at ¶ 5; Springer affidavit at ¶ 5. That technology became the subject of the 659



patent, which was issued in July, 1996. Complaint at ¶ 9; Springer affidavit at ¶ 3. After defendant's purchase of its predecessors, which included the 659 patent, it too entered a license and marketing agreement with Vangaurd in 1997, which superceded prior agreements. Springer affidavit at ¶¶ 6-9, 14. *See also* Marketing and Licensing Agreement, submitted as exhibit A to Springer affidavit, at ¶ 9. That agreement stated that the defendant owned the technology at issue here. Defendant's brief in support at 3; *see also* exhibit 3 to Declaration of Chaskin. It further states that the plaintiff would have to negotiate a separate license from the defendant before it could manufacture or deliver that technology. Defendant's brief in support at 4.

The plaintiff was awarded a TVA contract to construct a hazardous waste processing system and entered an agreement with defendant to construct a unit using defendant's technology. The parties refer to this as the "fixed system" or a "phase I" system. Complaint at ¶¶ 12, 13; Springer affidavit at ¶ 11. Plaintiff alleges it had to spend $700,000.00 to redesign the fixed system so that it would perform in a safe and reliable manner.[1] Complaint at ¶ 14. The defendant states it does not believe this assertion. Springer affidavit at ¶ 15. Defendant alleges that on February 3, 1999, it received a "stop work" order from the plaintiff concerning work on the Phase I system. Springer affidavit at ¶ 16; complaint at ¶ 17.

---

[1] While Vanguard states to this court that PEAT's design was flawed and therefore the system had to be redesigned, Vanguard represented in other litigation (see *infra*) that the reason the stop work order was issued to defendant was because "PEAT's billings grossly exceeded the cost estimates for PEAT's design tasks on Phase I of PEPS." March 7, 2000 Order of Judge Smith at 12, Case No.: CV99-S-2553-NE. *See also* declaration of Chaskin at ¶ 16.

Plaintiff asserted that it intended to complete the TVA system without the defendant's assistance, in violation of the Marketing & Licensing Agreement. Springer affidavit at ¶ 16.

In June, 1998, the plaintiff was awarded a subcontract by the United States Army to construct a mobile hazardous waste disposal system (a "mobile" or Phase II" system).[2] Complaint at ¶ 16. The plaintiff relayed its intention to complete the work on the Phase II project without the defendant and to modify the system, which defendant asserts violated the Marketing & Licensing Agreement. Springer affidavit at ¶ 16; hearing transcript of May 17, 2000 at 16, Civil Action No.: 2:00cv176, United States District Court for the Eastern District of Virginia, submitted as Exhibit F to Springer affidavit. The Marketing & Licensing Agreement has since expired, ending Vanguard's right to use PEAT's technology. *See* Exhibit 3 to complaint. *See also* Exhibit 5 to Declaration of Chaskin. In February, 2000, the defendant notified the plaintiff it no longer had a right to market PEAT's technology. Complaint at ¶ 23.

Based on violations of the Marketing & Licensing Agreement and other claims of PEAT, it filed suit against Vanguard in the United States District Court for the Northern District of Alabama in June, 1999, essentially for breach of contract. Springer affidavit at ¶ 17; March 7, 2000 Order of Judge Smith at 13-14, Case No.: CV99-S-2553-NE. This suit did not address the 659 patent, although Vanguard claims that patent was the basis for this suit. Springer affidavit at ¶ 18; complaint at ¶¶ 18, 19. This action was transferred to the

---

[2]Although unclear from the complaint, the defendant asserts that both the fixed and mobile systems used the same technology which can be configured in different ways. Springer affidavit at ¶ 12.

Eastern District of Virginia based on Vanguard's argument that the Alabama court lacked personal jurisdiction over it. It was then voluntarily dismissed by PEAT. Springer affidavit at ¶ 20. Vanguard then filed a demand for arbitration in August 1999. Springer affidavit at ¶ 19; *see also* March 7, 2000 Order at 14-15, CV99-S-2553-NE.

A second breach of contract action was filed in Alabama by PEAT in September, 1999, in which PEAT convinced the court it did have jurisdiction. Complaint at ¶ 18; Springer affidavit at ¶ 20; *see also* CV 99-S-2553-NE. In this second action, Vanguard alleged that the case should be dismissed, transferred or stayed subject to the arbitration clause in the TVA Phase I subcontract. Springer affidavit at ¶ 21. The Honorable Judge Smith ruled that the Phase I claims were subject to arbitration, but the Phase II claims were not and kept jurisdiction of the Phase II claims. This litigation is still pending. *See* March 7, 2000 Order of Judge Smith, submitted as Exhibit C to Springer affidavit, and amended complaint, submitted as Exhibit D. Vanguard appealed this Order, and the court stayed its proceedings pending appeal. Complaint at ¶ 26. That appeal was denied on January 4, 2001. *Id.*

Meanwhile, in September, 1999, Vanguard filed another suit in the Eastern District of Virginia, for a declaratory judgment that the claims in its arbitration demand were arbitrable and seeking an injunction. Springer affidavit at ¶ 23. In February, 2000, that court determined that it lacked jurisdiction and transferred the case to the District of Columbia. Springer affidavit at ¶ 23. *See also* complaint at ¶ 25. Vanguard then filed yet another

4

lawsuit in the Eastern District of Virginia in March, 2000.³ *See* Exhibit E to Springer Affidavit, March, 2000 complaint. That suit claimed that Vanguard had a reasonable apprehension of suit by PEAT for patent infringement with respect to the Phase II system. Defendant's brief in support at 9. That suit, as well as the one still pending in front of Judge Smith, and this current litigation, all address who owns the technology used in the Phase II system.

PEAT filed a motion to dismiss the March, 2000, Virginia case on the basis that Vanguard had no reasonable apprehension of suit as required for jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 and that the claims in that case were actually compulsory counterclaims in the litigation already pending before Judge Smith here in Alabama. Springer affidavit at ¶ 25. PEAT admits that in the case before Judge Smith, it did not bring any claims for infringement of the 659 patent.

Judge Morgan, in the Virginia litigation, stated on the record that the case before him should be dismissed based on considerations of judicial economy and fairness and declined jurisdiction under the Declaratory Judgment Act.⁴ Springer affidavit at ¶ 26; May 17, 2000 hearing transcript at 45-46, submitted as Exhibit F to Springer affidavit. Vanguard's counsel

---

³The court notes that in the second Eastern District of Virginia case, Vanguard argued that the Alabama courts were too slow. May 17, 2000 hearing transcript at 19, 22. The court there noted that "a good part of the delay is due to your election to appeal the court's ruling. Instead of doing that, you could have just filed a counterclaim." *Id.* at 23.

⁴During the hearing, Judge Morgan observed, "You could have raised this issue in the Alabama case, which would have been one less case for the federal court system to deal with involving these two companies." May 17, 2000 transcript at 18. He then stated, "one thing I do know is that we've got cases going on in three different federal courts involving these two parties in very closely related issues." *Id.* at 20.

then requested reconsideration of his Order and received a ten day delay to consult with its client concerning transferring that litigation to the Alabama court. May 17, 2000 hearing transcript at 48-49. However, Vanguard then filed a motion to transfer the Virginia action to the District of Columbia. Judge Morgan found such motion to transfer was not made in good faith and dismissed that case outright. Exhibit G to Springer affidavit at 1, 12. Six months later, Vanguard filed this case, three weeks after the Eleventh Circuit denied its appeal in Judge Smith' case. Plaintiff filed this declaratory judgment action on January 29, 2001 seeking a declaration that patent number 5,534,659 (the "659 patent"), owned by defendant, is invalid and unenforceable. Plaintiff further seeks a ruling that its hazardous waste treatment system does not infringe the 659 patent. Complaint at ¶ 1.

Plaintiff claims here that it has a reasonable apprehension of being sued for patent infringement. Complaint at ¶ 20. Plaintiff claims it is marketing its own design for the Phase II system, defendant disagrees.[5] Complaint at ¶ 21; First Amended Complaint in CV99-S-2553-NE, submitted as Exhibit D to Springer affidavit. Plaintiff alleges that it feared PEAT's notification that it had no right to continue using its technology was the basis of a patent infringement suit since it already knew the Marketing and Licensing Agreement had expired. Complaint at ¶ 24.

---

[5]Vanguard has a registered trademark ("PEPS") for hazardous waste disposal systems using plasma torch technology. Complaint at ¶ 23. PEPS is a marketing name of plaintiff, it is not a separate technology. Springer affidavit at ¶ 10.

6

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue

7

for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

### III. Legal Analysis

PEAT argues no actual controversy exists with regard to the 659 patent and thus no "actual controversy" as required by the Declaratory Judgment Act exists. *See* 28 U.S.C. § 2201. PEAT relies on *CAE Screenplates, Inc. v. Beloit Corp.*, which states that the standard to determine an actual controversy in a patent action is two pronged: 1) defendant's conduct must create reasonable apprehension on plaintiff's part of a patent infringement suit being brought, applying an objective standard; and 2) plaintiff must have engaged in infringing acts. *Id.*, 957 F.Supp. 784, 788-789 (E.D.Va.1997). The court finds that PEAT's conduct has not created an objectively reasonable apprehension on the plaintiff's part, but rather should have, by the time this case was filed, served to reassure the plaintiff no such action would be brought. *See CAE Screenplates*, 957 F.Supp. at 790.

Vanguard puts forth the interesting argument that PEAT is collaterally estopped from bringing its motion to dismiss because it asserted the same grounds in the Virginia case, in defense of Vanguard's identical lawsuit. Vanguard asserts that since the Virginia court

decided it had a "reasonable apprehension" of a patent infringement action and that its claims were not compulsory counterclaims, PEAT is now estopped from asserting the same defenses here.[6] However, as that court declined to exercise jurisdiction, this court finds that the determination of each of these issues was not necessary to that litigation.[7] As such, no bar prevents the defendant from raising such defenses here. *See e.g., SEC v. Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998) (listing the elements for collateral estoppel).

PEAT argues this court should decline to exercise jurisdiction as this case was filed solely for strategic reasons and a declaratory judgment action could have been brought in one of the already pending suits rather than this entire new action. The defendant further asserts that because Vanguard represented to the Virginia court that it would file a motion to transfer the case to Alabama and then failed to do so, the plaintiff should now be equitably estopped from bringing this action now.

---

[6]Vanguard has not asserted any legal theory which would prevent it from filing multiple lawsuits on the exact same issue in various courts around the country. This court notes that the Virginia decision was made under law which is not compulsory on this court. Applying the "logical relationship" test of the Eleventh Circuit, this court would likely find that the issues in this case do raise compulsory counterclaims under Rule 13, Fed.R.Civ.Pro. For example, the plaintiff argues that "the heart of this lawsuit [pending before Judge Smith] is the same technology covered by the 659 patent. Chaskin affidavit at ¶ 20. However, the court does not reach this issue as the court, as explained below, declines to exercise jurisdiction. The court finds that the plaintiff's arguments concerning PEAT's relitigating already determined issues to be unpersuasive as Vanguard is the party who is running around the country filing lawsuits against PEAT. *See* Vanguard's memorandum in opposition at 11, 13-14.

[7]Judge Morgan succinctly stated, "if I find that it's not a compulsory counterclaim, and if I find that your client has a reasonable apprehension of facing a patent infringement suit, together with its customs, should I then exercise my discretion to add a third lawsuit to all of these proceedings?" May 17, 2000 hearing transcript at 25. The court notes this is the exact question now facing this undersigned judge.

This court may decline to exercise jurisdiction under 28 U.S.C. § 2201. *See Federal Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1237 (11th Cir.2000). The court may decline to hear a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties. *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982). Interestingly, in Judge Smith's pending litigation, Vanguard argued that PEAT's claims should be dismissed because its declaratory judgment action then pending in the District of Columbia, encompassed the same subject matter or controversy. *See* Order of March 7, 2000 at 27, CV 99-S-2553-NE. Yet Vanguard has, since that argument has been made, filed at least two more lawsuits against PEAT in various jurisdictions.

Having considered the long and twisted series of lawsuits initiated by Vanguard since PEAT first filed suit in 1999, the court finds that this suit was filed due to Vanguard's misrepresentations in front of the Virginia Court. If counsel for Vanguard had followed through on his representations to that court, this case would not now be pending. See May 17, 2000 hearing transcript at 48. Thus, this court finds that this current case was interposed solely for delay and not because any "actual controversy" exists, as required by 28 U.S.C. § 2201. This finding by the court is bolstered by PEAT's repeated statements that it does not intend to sue Vanguard for patent infringement and its ongoing failure to bring such a suit. *See e.g.,* Exhibit 1 to defendant's brief in support, at 4-6; defendant's brief in support at 6, fn 1; *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed. Cir. 1992). *See also*

10

declaration of Chaskin at ¶ 21. As the court finds that this case was not brought due to the existence of an actual controversy, this court declines to exercise its jurisdiction.

Even if this court could find an actual controversy and therefore exercise jurisdiction, this court would decline to do so. *See Spectronics Corp. v. H.B. Fuller, Co., Inc.*, 940 F.2d 631, 634 (Fed. Cir.1991). This court finds this litigation does not merit the expenditure of this court's resources as it was not brought in good faith or otherwise in compliance with Rule 11, Federal Rules of Civil Procedure.[8]

Like the Honorable Judge Morgan, this court finds that counsel for Vanguard did not act in good faith in the Virginia court and further finds that the claims now pending are not brought in good faith as they could have been filed in Judge Smith's case. This court finds that the parties' controversy began February 3, 1999 when Vanguard sent PEAT a stop work order and that all of the ensuing lawsuits arise out of that event. The court further finds that after three years and four lawsuits, PEAT still has not brought a patent infringement case against Vanguard.[9] Thus, this court finds that Vanguard's "apprehension" of a potential

---

[8]The court does not make such accusations lightly. Under Rule 11(b)(1), Fed.R.Civ.Pro., an attorney is certifying by his signature on pleadings that such pleading is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation. Given the history of these parties, this court has no doubt that this action was filed for any one of these forbidden purposes.

[9]In fact, Vanguard's counsel represented to the Virginia court that "There is absolutely no question, there isn't any question that non-infringement of a patent is not before the Alabama court and never will be. There is nothing in the Alabama court that has to do with patent infringement. The Alabama court will never, nor will the D.C. court, ever take up the issue of infringement or non-infringement of this patent by our mobile system. It just won't happen." May 17, 2000 transcript at 29.

patent infringement case by PEAT is not reasonable.[10] *See e.g., Indium Corp. of America v. Semi-Alloys, Inc.,*781 F.2d 879, 883 (Fed.Cir.1985), *cert. denied*, 479 U.S. 820 (1986).

This court further finds that Vanguard's proclivity for filing lawsuits during the past three years are an express abuse of the judicial system and that this action is "but one more in" a long line of aggressive tactics employed by Vanguard to create as many procedural obstacles for PEAT, such as astronomically increasing litigation costs and preventing PEAT from having its original, legitimate claims heard by Judge Smith. The plaintiff was given a chance by Judge Morgan in Virginia to file these claims in the pending Alabama case in May, 2000 and absolutely failed to do so without excuse, opting instead to ask that the case be transferred to the District of Columbia. *See* defendant's Exhibits F and G.

This court further finds that adding yet another lawsuit to the parties' ever growing list of litigation does not promote judicial economy. As such, this court declines to exercise its jurisdiction.

## IV. Conclusion

The court having considered the arguments of the parties, the facts of this case and the relevant law, finds that this litigation was not brought in good faith. It is unable to find that the plaintiff can objectively claim a reasonable apprehension of suit for patent infringement after the amount of time which has passed since PEAT first filed its action and the number of suits filed since then. As such, this court finds it has no jurisdiction under the

---

[10] The court notes that the complaint in the litigation pending before Judge Smith was most recently amended on March 29, 2001 and still no patent infringement case has been brought.

Declaratory Judgment Act, 28 U.S.C. § 2201. This court being of the opinion that this case is due to be dismissed;

It is therefore **ORDERED** by the court that this case is hereby **DISMISSED WITH PREJUDICE.** The defendant is **ORDERED** to pay costs.

**DONE** and **ORDERED** this the __10__ day of April, 2001.

                                              INGE P. JOHNSON
                                              UNITED STATES DISTRICT JUDGE